STATE of Wisconsin, Plaintiff-Respondent,

v.

Earl PHILLIPS, Sr., Defendant-Appellant.†

Court of Appeals

*No. 80–048–CR. Submitted on briefs August 20, 1980.—
Decided September 23, 1980.*
(Also reported in 298 N.W.2d 239.)

† Petition to review denied.

For the defendant-appellant, the cause was submitted on the briefs of *Franklyn M. Gimbel* and *Gimbel, Gimbel & Reilly,* of counsel, of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Kirbie Knutson,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J.   Defendant appeals from a judgment of conviction for arson contrary to secs. 943.02(1)(a) and 939.05, Stats., and an order denying post-trial motions. We affirm.

The building destroyed was owned by Theanne Panos, and insured against fire loss under a policy issued by California Union Insurance Company. Although no proof of loss was filed, a notice of loss was filed with the insurer. A purchase money mortgage, and a second mortgage were executed on the property in favor of National Savings and Loan Association by Peter and Theanne Panos. Peter Panos died prior to the fire. The loans were not in default at any time relevant to this action, and were fully satisfied prior to trial.

Theanne Panos was a member of the board of directors of the Boy Blue stores for the midwest. Earl Phillips, Sr. (Phillips) was president of this corporation as well as building manager for the property destroyed. Phillips hired Earnest Froelich (Froelich) to do some contracting work on the property. Subsequently, Phillips allegedly contacted Froelich to perform the arson for $7,000. After the fire Froelich went to Florida where he was contacted by two detectives regarding the arson. Also, while in Florida, Froelich received $6,400 from Phillips for which a receipt was signed acknowledging payment on a remodeling contract.

Froelich entered into a plea bargaining arrangement whereby probation was to be recommended in exchange for his testimony against Phillips. At trial Phillips called several witnesses in his defense, but did not take the stand himself.

Three issues are raised for our determination:

1. Whether the trial court erred in determining that a mortgagee's interest is such that it confers a right of consent under sec. 943.02(1)(a) and (2), Stats.;
2. Whether the challenged reference to defendant made during the prosecution's closing argument was an improper comment on defendant's silence; and
3. Whether the trial court's admission of evidence that the insured building was destroyed was unduly prejudicial.

We affirm the trial court's disposition of each of these issues.

## MORTGAGEE'S INTEREST

Defendant was charged with arson of a building of another contrary to sec. 943.02(1) (a), Stats., which provides:

Arson of Buildings; Damage of Property by Explosives. (1) Whoever does any of the following is guilty of a Class B felony:

(a) By means of fire, intentionally damages any building of another without his consent; . . . .

The "another" in this case was the mortgagee, as the owner would not complain.[1] Section 943.02(2) defines "building of another" as:

[A] building in which a person other than the actor has a legal or equitable interest which the actor has no right to defeat or impair, even though the actor may also have a legal or equitable interest in the building. Proof that the actor recovered or attempted to recover on a policy of insurance by reason of the fire is relevant but not essential to establish his intent to defraud the insurer.

---

[1] At the preliminary examination Mr. Wells conveyed the following information regarding Mrs. Panos's refusal to participate in this action:

MR. WELLS: I would just advise the Court that Mr. Shellow advised me that he represents Mrs. Panos, that he knew that she was subpoenaed to testify, that he advised me today he could inform the Court if called as a witness here today, she would advise the Court what her true name is, other than that she would not testify. She would take the Fifth Amendment with regard to any testimony regarding the materials that are relevant to this preliminary examination.

THE COURT: Well, are you going to ask the Court to have her in Court.

MR. WELLS: No, not asking the Court to produce her or anything.

Defendant contends that the interest of a mortgagee is insufficient to constitute a legal or equitable interest within the terms of sec. 943.02(2). We do not agree that the interest stated in sec. 943.02(2) is to be so narrowly construed.

In construing a statute, the primary source is the language of the statute itself. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission,* 81 Wis.2d 344, 350, 260 N.W.2d 712, 715 (1978). The entire section and related sections are to be considered in its construction or interpretation. *Omernik v. State,* 64 Wis.2d 6, 12, 218 N.W.2d 734, 738 (1974). In determining the meaning of any single phrase or word in a statute, it is necessary to look at it in light of the whole statute. *State ex rel. Tilkens v. Bd. of Trustees of Firemen's Pension Fund,* 253 Wis. 371, 373, 34 N.W.2d 248, 249 (1948).

Defendant maintains that because both the legal and equitable ownership interest vests in the mortgagor, no interest remains to be vested in the mortgagee. In support of this contention, defendant cites *Mutual Federal Sav. & Loan Ass'n v. Wisconsin Wire Works,* 58 Wis.2d 99, 205 N.W.2d 762 (1973), *aff'd,* 71 Wis.2d 531, 239 N. W.2d 20 (1976) wherein the court states:

> In Wisconsin, a state which follows the lien theory of mortgages, the mortgagee does not have legal title. The full ownership, both equitable and legal, is in the mortgagor, and the interest of the mortgagee is that of a lien holder. The mortgagee is merely the holder of a security interest. *Id.* at 104, 205 N.W.2d at 765.

A close reading of this proposition discloses that the court does not hold that the mortgagee is without any interest in the property, but only that the interest is that of a lienholder rather than an owner. It is evident that a lienholder has an interest in the preservation of the real estate. We hold that the distinction urged by

defendant is not sufficient to preclude the application of the arson statute.

Statutory recognition of the existence of the interest of a mortgagee in the real estate interest is found in secs. 840.01[2] and 700.01(2) and (6), Stats.[3] Section 840.01 defines an "interest in real property" as including "security interests and liens on land." Section 700.01(2) further includes a real estate mortgage as an instrument of transfer "effective to transfer an interest in property," with property defined in sec. 700.01(6) as including real or personal property.

Where a statute is capable of different construction, that which works an absurd or unreasonable result should be avoided. *Braun v. Wisconsin Electric Power Co.*, 6 Wis.2d 262, 268, 94 N.W.2d 593, 596 (1959). Were we to construe sec. 943.02, Stats., as urged by defendant just such an absurd result would follow. Any "owner" could enter into a conspiracy to destroy a property and then

---

[2] Section 840.01, Stats., provides:

Definition of Interest in Real Property. As used in chs. 840 to 846 "interest in real property" includes estates in, powers (as provided in ch. 702) over, and all present and future rights to, title to, or interests in real property, including, without limitation by enumeration, security interests and liens on land, easements, profits, rights of appointees under powers, rights under covenants running with the land, powers of termination, dower, curtesy and homestead; the interest may be such as was formerly designated legal or equitable; the interest may be surface, subsurface, suprasurface, riparian or littoral; but "interest" does not include interests held only as a member of the public nor does it include licenses.

[3] Section 700.01, Stats., provides in part:

(2) "Instrument of transfer" means an instrument which is effective to transfer an interest in property; it includes but is not limited to a will, a deed, a contract to transfer, a real estate mortgage and an instrument creating a security interest in personal property under ch. 409.

. . . .

(6) "Property" means real or personal property.

relieve the coconspirator of criminal responsibility by not filing an insurance claim and by taking the fifth amendment. We refuse to condone such a result. It is evident that the interest of the mortgagee is not one which defendant had a right to impair or defeat. Accordingly, we hold that sec. 943.02(1) is sufficiently broad to encompass a mortgagee's interest.

## COMMENT ON DEFENDANT'S SILENCE

Defendant takes exception with the following statement made by the prosecutor in the rebuttal portion of his closing argument: "And in the end what does Mr. Phillips tell you about [Earnest Froelich]?" The trial court recognized that this comment, if taken out of context, could be construed as a blatant reference to defendant's silence at trial, however, when it was considered in the context of the argument it was not prejudicial. Defendant asks us to reverse this determination of the trial court. We decline to do so.

Comments on a defendant's silence, whether direct or indirect, are highly disfavored but will not automatically require reversal. Reversal is only required where the statement is manifestly intended to be or where it is of such a type that the jury would naturally and necessarily take it to be a comment on defendant's silence or his failure to testify. *United States v. Muscarella*, 585 F2d 242, 249 (7th Cir. 1978). However, where the statement when viewed within the context of the entire record, and its probable effect on the jury is harmless beyond a reasonable doubt we will not reverse. *Id.* at 250.

Applying this analysis to the statement made here, we hold that it does not furnish grounds for reversal. We concur in the trial court's analysis in its decision on post-trial motions:

In effect, the prosecutor is saying not that Phillips is silent as to Froelich's credibility. Rather, he is stating that the evidence as to Phillips's business acumen and business association with Froelich makes the "demented firebug" defense wholly implausible. It appears that he is arguing that the evidence should tell the jury that Phillips would not have dealt with the type of person that he is attempting to portray Mr. Froelich to be.

The trial court concluded that "it was a proper comment based upon the evidence and arguments presented by both sides to the jury, intended not to discredit Phillips but to bolster the credibility of Froelich." Where the statement introduces or provides a transition between defendant's evidence or the theory of the case, no error will be found. *See United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.), *aff'd,* 417 U.S. 211 (1973); *United States v. Reicin,* 497 F.2d 563, 572 (7th Cir.), *cert. denied,* 419 U.S. 996 (1974); *United States v. Rochan,* 563 F2d 1246, 1249 (5th Cir. 1977). We find no abuse of discretion in the trial court's conclusion that the comment related directly to Froelich's credibility, and only indirectly to defendant's failure to testify. Accordingly, the remark is not one which would naturally and necessarily be construed by the jury to be a comment on defendant's failure to testify.

Defendant further contends that even if it is construed in the above context, it is error as only the defendant had the information to contradict the statement. In support of this contention, defendant cites *United States v. Buege,* 578 F2d 187 (7th Cir. 1978), *cert. denied,* 439 U.S. 871 (1978), which provides:

This court has previously held that when a prosecutor refers to testimony as uncontradicted where the defendant has elected not to testify and when he is the only person able to dispute the testimony, such reference necessarily focuses the jury's attention on the defendant's failure to testify and constitutes error. *Id.* at 188.

This reasoning is inapplicable as sufficient evidence was presented by both sides from which the jury could infer an answer to the prosecution's rhetorical question. Evidence was presented as to Froelich's capabilities as well as defendant's business acumen. From this the jury could reach a conclusion regarding Froelich's credibility.

Accordingly, we find the trial court correctly denied defendant's motion for a mistrial.

## ADMISSION OF EVIDENCE OF FIRE INSURANCE

Defendant contends that the trial court erred in admitting evidence of fire insurance on the property destroyed. Objection was made at the time of admission as well as in a post-trial motion for mistrial. At both times the trial court deemed it admissible.

Defendant argues that the evidence is irrelevant as motive is not an element of the offense charged. He also argues that even if it is deemed relevant, it was so unduly prejudicial as to warrant exclusion.

Although evidence of motive is not an element of any crime and will not alone establish guilt or innocence, it is admissible if it meets the same relevance standards to be applied to other evidence. *State v. Berby,* 81 Wis.2d 677, 686, 260 N.W.2d 798, 803 (1978). Relevant evidence is defined as any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Sec. 904.01, Stats. Although relevant evidence is generally admissible, sec. 904.02, it may be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or

needless presentation of cumulative evidence." Sec. 904.-03, Stats.

In reviewing a question on the admissibility of evidence:

> The question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971). The test is not whether this court agrees with the ruling of the trial court, but whether appropriate discretion was in fact exercised. *State v. Wollman,* 86 Wis.2d 459, 464, 273 N.W.2d 225, 228 (1979).

Defendant presents several theories in support of his contention that the insurance evidence is irrelevant: first, a proof of loss was never filed; second, defendant was not a beneficiary under the insurance contract; third, insurance was required by the lender; and fourth, other motives could possibly explain the arson.

The trial court in its decision on post-trial motions applied the relevance standards discussed above, and concluded that the evidence of insurance coverage was relevant to the state's burden of proving criminal cooperation, and the intent to damage the building. We find that in reaching this conclusion, the trial court properly exercised its discretion in applying the relevant legal principles to the facts of this case. Neither the remoteness of defendant's opportunity to benefit from the insurance, the existence of other reasons for insuring the property, nor the existence of other possible motives for the destruction of the property eliminates the relevance of the insurance evidence in proving some motive for the arson.

Defendant additionally contends although the evidence may be relevant, it was unduly prejudicial and its admission would mislead and confuse the jury into believing

this case was one for insurance fraud under sec. 943.02 (1) (b). The trial court considered this question and concluded that the high probative value of the evidence in establishing defendant's criminal agency, and his responsibility for the fire, were not outweighed by the possible prejudice that might result. We find no abuse here, particularly in view of the trial court's correct instruction to the jury on the elements of the crime charged.

*By the Court.*—Judgment and order affirmed.